UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:05CV-104-R

DAVID LOVELESS                                                                                          PLAINTIFF

v.

UNITED STATES ENRICHMENT CORP. and
METROPOLITAN LIFE LTD.                                                                       DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on briefs of the parties for judgment on the pleadings. Plaintiff David Loveless filed a Brief (Dkt. # 14), to which Defendants United States Enrichment Corporation ("USEC") and Metropolitan Life Ltd. ("MetLife") responded (Dkt. # 17). Plaintiff replied (Dkt. # 18), and this matter is now ripe for adjudication. For the reasons that follow, the Court **AFFIRMS** the claims administrator's decision.

**BACKGROUND**

Plaintiff David Loveless filed this action for judgment against MetLife, claims administrator of USEC's Group Long-Term Disability Plan ("Plan"), which is governed by the Employee Retirement Income Security Act of 1974 (29 USC §§ 1001 *et. seq.*) ("ERISA"). Plaintiff was employed by USEC from 1996 until May 14, 2004, when he went on medical leave. By virtue of his employment, he was covered under the Plan. In August of 2004, Loveless applied for long-term disability benefits "based upon chronic neck, hip and knee pain, small joint effusion, and multiple bony fragment resulting in significant restriction in work-related activities." (Complaint, Dkt. # 1, at ¶ 8.). These symptoms apparently arose, at least initially, out of an automobile accident in 1994. In support of this claim, Plaintiff submitted an

Attending Physician Statement ("APS") from Dr. Michael Gavin, made on August 9, 2004. MetLife denied Plaintiff's claim; he appealed the denial, and received his final denial on March 14, 2005, at which point his administrative remedies were exhausted. Plaintiff brought this claim under the ERISA statute, which authorizes civil lawsuits "by a participant ... to recover benefits due to him under the terms of his plan...". 29 U.S.C. §1132(a)(1)(B). He also seeks consequential and punitive damages as a result of Defendants' alleged bad faith in refusing to pay his claim.

## STANDARD

The parties have agreed that the Plan is regulated by ERISA and that judicial review of action taken under such a plan is that set forth in *Wilkins v. Baptist Healthcare Systems, Inc*. 150 F.3d 609, 617 (6th Cir. 1998). Under that precedent, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, *id.* at 619, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and capricious standard applies. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the parties agree that the Plan grants its administrators such discretion and that the arbitrary and capricious standard applies.

When applying the arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062,1071 (6th Cir. 1994) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it. *Id.* In evaluating the administrator's decisions, this Court must consider only the evidence before the

administrator at the time, *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67 (6th Cir. 1988), and must account for potential conflicts of interest. *Kulkarni v. Metropolitan Life Ins. Co.*, 187 F. Supp.2d 724, 727 (W.D. Ky. 2001) (citing *Firestone Tire and Rubber Co., v. Bruch*, 489 U.S. 101, 115 (1989); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998)).

## ANALYSIS

Plaintiff argues that Defendants' denial of his claim for LTD benefits was arbitrary and capricious because: (i) the weight of the medical evidence available to Met Life supports his disability claim; and (ii) the Defendants have not offered a reasoned explanation for their denial. As to the bad faith claim, Plaintiff argues that "[g]ood faith and fair dealing require the Defendants [to] administer the disability insurance plan for the benefit of both themselves and Mr. Loveless" and that, despite this duty, "at no time was Mr. Loveless' claim given a full and fair review." (Dkt. # 14, at 7-8).

Plaintiff argues that Defendants did not properly consider the opinions of his treating physicians and the on-site doctors who examined him at the plant. Plaintiff acknowledges that since *Black & Decker Disability Plan v. Nord*, the "treating physician" rule no longer applies to ERISA cases. 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). As the Supreme Court in that case said:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Id.* at 834. Plaintiff argues, though, that "the opinions of the physicians who have treated and examined Mr. Loveless can not merely be ignored when making a decision about his disability

3

status." (Dkt. # 14, at 3).

In its letter of November 6, 2005, MetLife described the materials it considered and the basis for its decision to deny benefits. It noted:

(i) the August 9, 2004 APS from Dr. Gavin, which "indicated a diagnosis of Hip Pain and Knee Pain;"

(ii) a statement from Dr. Jack Lososki, a doctor employed by USEC at the plant, which "indicated that [Plaintiff] had a several year history of chronic pain" and that "[Plaintiff had been] able to function in a productive capacity with little [*sic*] complaints of pain and that it was unclear how [Plaintiff's] condition changed" in a way that would indicate total disability now;

(iii) a phone message Plaintiff left with MetLife stating that his "constant pain [had] progressively worsened;"

(iv) an October 7, 2004 statement from Dr. Gavin, which discussed the 1994 automobile accident and "stated that [Plaintiff] currently had worsening residual pain from this accident and that [Plaintiff's] abnormal gait and chronic pain prevented [Plaintiff] from performing the duties of [his] own occupation" and "reported that [Plaintiff] might have had a fracture that had not been completely resolved;"

(v) information provided to it by USEC, which discussed the requirements of Plaintiff's previous position ("testing mechanic"), which had accommodated his limitations but which was phased out; USEC stated that it had offered Plaintiff another position that would have also accommodated his physical limitations, but that Plaintiff declined that positon;

(vi) a supplemental statement from Plaintiff, which MetLife said "did not contain any medical information in regards to [his] increased pain condition."

(ML 153-54). MetLife concluded: "After a careful review of all of the information contained in [Plaintiff's] file, we could not find any objective medical documentation to support [Plaintiff's] claim for benefits. Therefore, based on this medical information, we have determined that we have not been provided with medical documentation that would substantiate your inability to perform the duties of an Electrical Mechanic beginning November 19, 2004." (*Id.*).

On January 6, 2005, Plaintiff's counsel notified MetLife that Mr. Loveless was appealing the denial of benefits, and submitted additional medical information in the form of three documents: a November 19, 2004 clinical note from Dr. Mutchler at the USEC clinic, a December 7, 2004 office note from Dr. Kolb, an orthopedist, and a January 6, 2005 APS from Dr. Gavin. (ML 147-152). The note from Dr. Mutchler discusses Plaintiff's condition and notes that Plaintiff reported, for the first time, that he had fallen at home in May of 2004, and that this fall aggravated the pre-existing difficulties he was having as a result of the automobile accident. (ML 149). The note from Dr. Kolb discusses Plaintiff's pain, and states that:

> On reviewing his records I would find it consistent with his complaints. I think that he has injuries to both of his right hip and knee, which cause considerable pain and discomfort. These would severely limit his ability to walk, stand, squat or go up and down stairs. It would also cause problems with prolonged sitting. I believe his neck and back would also make it very difficult for him to do any consistent sedentary type work and in reviewing his records and other physician's statements I do believe the patient is disabled.

(ML 152). The note from Dr. Gavin summarizes Plaintiff's history and then says:

> He suffers from residual pain, which is worsening. He also has an abnormal gait. The patients' [*sic*] pain and abnormal gait prevent him from performing his or any occupation. The patient has on x-rays chronic changes in the knee, distal femur and he has multiple bony fragment [*sic*] located in the proximal femur and he may have intraarticular loose bodies as well in the right hip. The AP of the pelvis shows that the patient has had a facture and there was even a suggestion there that he may have had a fracture that has not completely resolved as of yet. It is therefore my feeling that the patient is permanently disabled.

(ML 157). Plaintiff's counsel then forwarded further medical information on January 24, 2005, including: an APS from Dr. Kolb; a statement from Mr. Jack Lasoski, a Physician's Assistant at USEC; and Dr. Gavin's office notes from May 19, 2004 to November 15, 2004. (ML 137). Dr. Kolb's APS, completed on 1/12/05, noted subjective symptoms of "Pain in hip and knee" and under objective findings said: "Exam reveals pain with motion." (ML 138). The note from Mr. Lasoski states: "Health Services has received a letter dated 12/07/04 from a local orthopedist, Dr. Kolb, and agree with his findings that the patient is disabled. He was evaluated in our office by Dr. Mutchler on 11/19/04 and found to be disabled. In view of the additional information, I also agree that the patient is disabled." (ML 141).

On February 14, 2005, Plaintiff's counsel forwarded more medical records for consideration on appeal, consisting of: records relating to Plaintiff's treatment for injuries sustained in the 1994 automobile accident; records from USEC regarding his treatment there; office notes from Dr. Kolb; and notes from Dr. Gavin from November of 1996 to November of 2004.

As part of the appeals process, MetLife hired an independent physician consultant ("IPC") to review the claim file. Dr. Michael Chmell reviewed the records and submitted an assessment on February 22, 2005; he supplemented the assessment after reviewing the additional medical records provided by Plaintiff. Dr. Chmell summarized the records provided and concluded: "...Mr. Loveless has a mild impairment in the lower extremity ... which would preclude him only from carrying out excessive walking or standing activities, excessive climbing activities, and squatting activities. From an orthopedic perspective, there is no other objective evidence within this medical record to support any further functional limitations or restrictions."

6

(ML 33). The additional medical evidence, apparently including an x-ray, did not cause Dr. Chmell to change his opinion. (ML 28).

On March 14, 2005, MetLife denied Plaintiff's appeal. (ML 21-22). In so doing, it summarized the material reviewed, and noted that it had submitted the file to an IPC. It summarized Dr. Chmell's findings as follows:

> The Physician Consultant reviewed the medical information and indicated that the primary diagnoses affecting Mr. Loveless' ability to work were chronic hip and knee pain with decreased knee flexion, status post patellar fracture. The physician consultant stated that from an orthopedic perspective, Mr. Loveless has a mild impairment in the lower extremity due to his decreased hip rotation and his decreased knee flexion. There would be a miminal impairment in the right lower extremity function which would prevent him from extensive walking or standing activities, excessive climbing or squatting activities and very heavy lifting. Mr. Loveless would have the capabilities to perform light to medium level work activities. These restrictions have been in place prior to his date last worked and the medical information does not support that his condition changed or that his restrictions became worse.

(ML 22). MetLife then concluded that: "[it had] not been provided with sufficient medical documentation of a continuing disability that would prevent Mr. Loveless from performing the duties of his regular job. Therefore, the original claim determination was appropriate." *Id.*

Insofar as the opinions of Plaintiffs' treating physicians and Dr. Chmell differ as to Plaintiff's level of disability, MetLife does not act arbitrarily or capriciously by choosing among conflicting medical reports. *University Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 (6th Cir. 2000) ("complete consensus is not required to establish a reasoned basis for an administrative decision"). In practice, plan administrators have broad discretion to sort out disagreements among medical professionals. *See McDonald v. Western-Southern Life Insur. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) ("Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been

7

arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.").

In this case, MetLife's decision to deny benefits was supported by medical evidence and a reasoned explanation. Plaintiff argues that MetLife ignored the opinions of his treating physicians, contrary to the rule in *Black and Decker Disability Plan v. Nord*, discussed above. However, the record reveals that MetLife did not fail to consider those opinions; rather, it discounted them on the basis of the lack of objective evidence to support them. This lack of objective evidence to support Plaintiff's subjective reports of increased pain is also a reasonable explanation for MetLife's decision to deny Plaintiff's claim.

This conclusion also dictates that Plaintiff cannot prevail on his bad faith claim. MetLife provided Plaintiff ample opportunity to provide whatever medical evidence he wished to support his claim, and considered the evidence he provided. Plaintiff argues that the evidence supporting his claim is so overwhelmingly in support of the claim that denying it constituted bad faith; as discussed above, examination of the evidence reveals that it is not. Therefore, the denial was neither arbitrary and capricious nor made in bad faith.

Although Plaintiff's Brief and Reply Brief do not address it, Plaintiff's Complaint contains an allegation that Defendants "failed to provide plaintiff with the opportunity for a full and fair review of his claim and further failed to timely provide the necessary information required for accurate notice in violation of 29 USC Section 1133." (Dkt. # 1, ¶ 13). This section requires employee benefit plan providers to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Though it is unclear which of MetLife's actions Plaintiff believes constitute a violation of § 1133, the record indicates that there was some difficulty with Plaintiff's receipt of his initial denial letter (ML 3-9). If there were such a violation, Mr. Loveless "would not be entitled to recover substantive damages ... because violations of the procedural sections of ERISA do not give rise to claims for substantive damages." *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372 (6th Cir. 1996). Even if the Court were to construe Plaintiff's Complaint in such a way that it alleged a separate claim for procedural damages, the Court's review of the record reveals that MetLife's notice was adequate and that Plaintiff's claim received a full and fair review.

## CONCLUSION

For the reasons outlined above, the claims administrator's denial of benefits shall be **AFFIRMED**. The case shall be **DISMISSED**. An appropriate order shall issue.

9